Stacey C. Stone, Esq.
Email: sstone@hwb-law.com

**Attorney for Plaintiffs**

701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

**HOLMES WEDDLE & BARCOTT, PC**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LOUIS IMBRIANI, ROBERT RUBEY, MICHAEL HANIFEN, HOLLY DERIVERA, BRIAN JOHNSON, and HOCKEY OFFICIALS OF ALASKA, | |
| Plaintiffs, | |
| v. | |
| AUSTIN QUINN-DAVIDSON, in her capacity as Acting Mayor for the Municipality of Anchorage, | |
| Defendant. | Case No. 3:21-cv-_____ |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Louis Imbriani, Robert Rubey, Michael Hanifen, Holly DeRivera, Brian Johnson and Hockey Officials of Alaska (hereinafter "Plaintiffs"), by and through their counsel of record Holmes Weddle & Barcott, P.C. for their complaint again Defendant Austin Quinn-Davidson, in her official capacity as Acting Mayor for the Municipality Anchorage, state as follows:

### I.     INTRODUCTION

1.     On March 12, 2020, then Mayor of the Municipality of Anchorage, Ethan Berkowitz, executed a Proclamation of Emergency (COVID-19). For a period of over one year, the residents of Anchorage have lived under a "state of civil emergency."

COMPLAINT AND DEMAND FOR JURY TRIAL                     Page 1 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                  Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 1 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

2.     Mayor Berkowitz and current acting Mayor Quinn-Davidson have issued a series of confusing, contradictory and ultimately arbitrary and capricious Executive Orders[1] predicated on a continuing emergency.

3.     The continuing emergency orders have stripped the citizens of Anchorage of their inherent fundamental rights.  Anchorage citizens' daily activities have been dictatorially micromanaged and restricted by these overzealous executive orders infringing on the most basic freedoms.  These rights are being denied due to unfounded fear and intentional manipulation.

4.     This usurpation of power has been perpetuated under the guise of SARS-CoV2 virus, and the COIVD-19 that it has the ability to cause in infected individuals.  When COVID-19 first appeared in Alaska, and namely Anchorage, it was novel, there was little reliable data, and our collective experience was limited.  A year later, however, we are well past the nascent stage.  Conditions on the ground have changed, and Anchorage citizens as a populous know far more.

5.     The evidence that COVID-19 is not as dangerous as originally anticipated and predicted has continued to steadily mount and is now overwhelming.  The Alaska Department of Health and Social Services ("Alaska HSS") reports that COVID-19 has killed 329 Alaska residents, representing 0.04% of the State's population.  In Anchorage, Alaska HSS reports that COVID-19 has killed 173 Anchorage residents, representing 0.06% of the Municipality's population.

6.     All life is precious, but the infections and death figures and rates do not even come close to approaching the dire forecasts and models presented to the Anchorage public in

---

[1] Municipality of Anchorage Emergency Orders can be viewed here: https://covid-response-moa-muniorg.hub.arcgis.com/pages/emergency-orders (last visited April 21, 2021).

COMPLAINT AND DEMAND FOR JURY TRIAL                                         Page 2 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                    Case No. 3:21-cv-_____

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

March 2020. COVID-19 lags far behind cancer, heart disease and accidents as a cause of death in Alaska, and these are conditions for which no emergency has or ever will be declared.

7. There are now multiple vaccines in circulation, and Alaska will have enough COVID-19 vaccine for every eligible resident by the end of May. The percentage of Alaskans who are fully vaccinated is 41.2 percent. The percentage of Alaskans over the age of 65 who are fully vaccinated is 70.9 percent. And in Anchorage, the number is even higher, as 74.5 percent of Anchorage residents over the age of 65 are fully vaccinated.

8. The plaintiffs in this case have all been injured in various capacities by the unconstitutional restrictions placed by the defendant. Without court action, the plaintiffs will be left without redress.

9. Plaintiffs seek, among other remedies, a declaratory judgment stating that Emergency Proclamations are null and void, because the premise upon which they are based clearly show a lack of exigent circumstances to continue to justify an emergency.

10. Plaintiffs respectfully request that this court, as a coequal branch of government, declare unconstitutional the actions taken by the executive.

## II.     PARTIES

11. Plaintiffs are residents of the Municipality of Anchorage, and have suffered injuries as a direct and proximate result of the imposition of the Continuing Emergency Proclamation and other Emergency Orders, which have infringed their civil liberties guaranteed under the U.S. Constitution and the Alaska Constitution.

12. Plaintiff Louis Imbriani is an individual whose personal livelihood has been impacted as a result of the individual mandates. As a result of the Emergency Proclamation, he has lost work, been required to travel further for work, been forced to suffer increased costs due

COMPLAINT AND DEMAND FOR JURY TRIAL                              Page 3 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                         Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 3 of 28

to changing mandates, and has overall been unable to properly execute his duties as an independent contractor.

13.     Plaintiff Robert Rubey is an individual who has been impacted both socially and economically as a results of the Emergency Proclamation.

14.     Plaintiff Michael Hanifen is a Doctor of Chiropractic who is engaged in business within the Municipality of Anchorage.

15.     Plaintiff Holly DeRivera is an individual who suffers from serious medical conditions that prevent her from safely wearing a face mask.  As a result of her medical inability to wear a mask, and due to the Emergency Proclamation regarding mask wearing, she has suffered public ridicule among other harms.

16.     Plaintiff Brian Johnson is an individual who has had his ability to enjoy the rewards of his industry dashed by the Emergency Proclamation.  The actions of the defendant have placed undue burden and stress upon him.  Plaintiff Johnson is the father of two children who have likewise been impacted due to the restrictions set forth in the Emergency Proclamation.

17.     Plaintiff Hockey Officials of Alaska is a sole proprietorship with its principal place of business located in Chugiak, Alaska.  As a result of the Emergency Proclamation, Hockey Officials of Alaska has suffered damages due to being unable to operate, unable to operate in an economically reasonable manner, and due to severe restrictions in place.

18.     Defendant Acting Mayor Austin Quinn-Davidson is, and was at times relevant, the Acting Mayor of the Municipality of Anchorage.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK  99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                          Page 4 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                                Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 4 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

## III. JURISDICTION AND VENUE

19.     This court has original jurisdiction pursuant to 28 USC § 1331 as this action rises under the Constitution of the United States, as this matter involves multiple claims arising under the 1st, 4th, 5th, 6th, 9th and 14th Amendments and related precedent.

20.     This court also has jurisdiction pursuant to 42 USC § 1983, as this matter involves the deprivation of rights, protections, privileges and immunities secured by the U.S. Constitution.

21.     This court has supplemental jurisdiction over the related Alaska law claims pursuant to 28 USC § 1367.

22.     Venue is proper pursuant to 28 USC § 1391 as the defendant is a resident of Alaska, and the events that gave rise to the claim occurred in Alaska.

## IV. JURY DEMAND

23.     Pursuant to Fed. R. Civ. P. 38 and Plaintiffs hereby demand a trial by jury in this action of all issues so triable.

## V. STATEMENT OF FACTS

24.     On January 21, 2020, the Centers for Disease Control and Prevention ("CDC") confirmed the first case of COVID-19 in the United States.[2]

---

[2] https://www.cdc.gov/media/releases/2020/p0121-novel-coronavirus-travel-case.html (last visited April 22, 2021).

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 5 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                     Case No. 3:21-cv-_____

Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 5 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

25.     On February 11, 2020, the World Health Organization ("WHO") reported on its website that, "[m]ost people infected with the COVID-19 virus will experience mild to moderate respiratory illness and recover without requiring special treatment.  Older people, and those with underlying medical problems like cardiovascular disease, diabetes, chronic respiratory disease, and cancer are more likely to develop serious illness."[3]

26.     On March 9, 2020, the CDC issued an alert that individuals over the age of 60 with certain preexisting conditions and co-morbidities are likely at higher risk of fatality if COVID-19 is contracted.[4]

27.     On March 11, 2020, Governor Dunleavy of the State of Alaska issued a Public Health Disaster Emergency Declaration for COVID-19.[5]   Therein, Governor Dunleavy cautioned that the Commissioner of Alaska HSS certified that it was "highly probable that an outbreak of COVID-19" would occur in the State of Alaska in the near future.

28.     On March 12, 2020, then Mayor Berkowitz issued a Proclamation of Emergency (COVID-19) for the Municipality of Anchorage.[6]  This Proclamation explicitly was subsequent to the State of Alaska declaration of emergency.  Therein, Mayor Berkowitz stated that "COVID-19 poses a grave and imminent threat to the health, safety and welfare of the residents of the Municipality."

29.     The Proclamation was issued pursuant to Anchorage Muni. Code § 3.80.060H.

---

[3] https://www.who.int/health-topics/coronavirus#tab=tab_1 (last visited April 22, 2021).

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 22, 2021).

[5] https://gov.alaska.gov/wp-content/uploads/sites/2/COVID-19-Disaster-Packet.pdf (last visited April 22, 2021).

[6] https://www.muni.org/covid-19/documents/eo-20%20attachment%20d%20-%20organized%20sports%-2041221%20230pm.pdf (last visited April 22, 2021).

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 6 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                              Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 6 of 28

30.     Anchorage Muni. Code § 3.80, *et. seq*. addresses Civil Emergency.

31.     On March 12, 2020, the Anchorage Assembly extended the Declaration of Civil Emergency (COVID-19) directing the Mayor to implement any orders necessary to prevent the transmission of infectious disease and to ensure causes of contagious disease are subject to proper control and treatment.[7]   Since the initial resolution, the Assembly has extended the Declaration of Emergency eight times, most recently on April 13, 2021.[8]

32.     On March 16, 2020, Mayor Berkowitz issued Emergency Order EO-01 proclaiming that all establishments serving food and beverages be closed for dine-in service, all entertainment facilities be closed to the public, and banning all events over fifty people.[9]

33.     Subsequent to Emergency Order EO-01, Mayor Berkowitz followed by Acting Mayor Quinn-Davidson issued multiple emergency orders restricting Anchorage citizens' free exercise of their fundamental rights and freedoms.

34.     On March 24, 2020, CDC and National Vital Statistics System issued "COVID-19 Alert No. 2." This alert released a "newly-introduced ICD code" (U07.1) to "accurately capture mortality data for Coronavirus Disease 2019 (COVID-19) on death certificates." The rule established a unique system for collecting and reporting "cause of death" information on individuals who die while purportedly infected with COVID-19. Collecting and reporting

---

[7] Assembly resolutions related to the Anchorage Coronavirus response can be found here https://covid-response-moa-muniorg.hub.arcgis.com/pages/updates (last visited April 22, 2021).

[8] https://meetings.muni.org/AgendaOnline/Documents/ViewDocument/AR%202021-110_1__EIGHTH_EXTENSION_EMERGENCY_DECLARATION_4821-REV.DOCX.pdf?meetingId=4096&documentType=Agenda&itemId=23557&publishId=14260&isSection=false (last visited April 22, 2021).

[9] All emergency orders can be found on the Municipality of Anchorage Coronavirus Response website https://covid-response-moa-muniorg.hub.arcgis.com/pages/emergency-orders (last visited April 22, 2021).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 7 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                    Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 7 of 28

"cause of death" information on individuals who die with any other infectious disease continues to be handled under the old rules. The Alert states "COVID-19 should be reported on the death certificate for all decedents where the disease caused *or is assumed to have caused or contributed* to death" (emphasis added).[10]

35. On December 11, 2020, The U.S. Food and Drug Administration ("FDA") issued the first Emergency Use Authorization ("EUA") for the Pfizer-BioNTech COVID19 Vaccine, allowing its distribution and use in the United States.[11]

36. On December 18, 2020, the FDA issued its second EUA for the Moderna COVID-19 Vaccine, allowing its distribution and use in the United States.[12]

37. On February 14, 2021, Governor Dunleavy declined to further extend the Declaration of Public Health Disaster Emergency, and the same expired.[13]

38. On February 27, 2021, the FDA issued its third EUA for the Janssen COVID-19 Vaccine, allowing its distribution and use in the United States.[14]

39. On April 12, 2021, Acting Mayor Quinn-Davidson issued EO-20 which went into effect on April 16, 2021. In establishing the same, the defendant arbitrarily and capriciously indicated that she had set a target vaccination rate, and that once 70 percent of the

---

[10] https://www.cdc.gov/nchs/data/nvss/coronavirus/Alert-2-New-ICD-code-introduced-for-COVID-19-deaths.pdf (last visited April 22, 2021).

[11] https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccine (last visited April 22, 2021).

[12] https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine (last visited April 22, 2021).

[13] http://dhss.alaska.gov/News/Pages/2021/20210218-DDAlert.aspx#:~:text=As%20of%20February%2014%2C%202021,to%20COVID%2D19%2C%20expired (last visited April 26, 2021).

[14] https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine (last visited April 22, 2021).

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 8 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                     Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 8 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK  99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

eligible population of Anchorage was fully vaccinated, the order would convert from mandatory to advisory.

40. On April 13, 2021, the Anchorage Assembly documented that the vaccine is widely available in Anchorage.

41. The trajectory of governmental response to COVID-19 was tragically influenced by an admittedly flawed model developed by Neil Ferguson of the Imperial College of London, which predicted 2.2 million deaths from COVID-19 in the United States (there have been 566,494[15]), and tens of millions of deaths worldwide (there have been 3,074,926[16]).[17]

42. There have been significant issues with epidemiological forecasting, and COVID-19 was not unique, as many forecasting efforts essentially failed.[18]  Indeed, few hospitals were operating at or above capacity and only for a small number of weeks.  In addition, several healthcare temporary facilities sat empty, and were never utilized.

43. In March and April 2020, the Anchorage Mayor told plaintiffs they had to be stripped of their constitutional freedoms to "flatten the curve" of COVID-19 cases.  And this justification continued throughout 2020.[19]

44. In late March 2020, in Anchorage, it was announced that the Alaska Airlines Center was converted into an alternate care site, this in spite of the fact that at the time it was

_____

[15] https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited April 23, 2021).

[16] https://coronavirus.jhu.edu/ (last visited April 23, 2021).

[17] *See e.g.* https://www.nytimes.com/2020/03/16/us/coronavirus-fatality-rate-white-house.html (last visited April 23, 2021).

[18] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7447267/ (last visited April 23, 2021).

[19] https://www.alaskasnewssource.com/content/news/Anchorage-has-flattened-the-curve-once-before-we-can-do-it-again-Mayor-Berkowitz-discusses-COVID-19-in-Alaska-571594531.html (last visited April 23, 2021).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 9 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                         Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 9 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

converted only 45 percent of inpatient beds were occupied statewide.[20]  The site was never used.[21]

45.     Alaska HSS reports that COVID-19 has killed 173 Anchorage residents, representing 0.06% of the Municipality's population.[22]  There have been 775 hospitalizations in Anchorage, representing 0.3% of the Municipality's population.   This figure alone establishes that there is no justification for the Emergency nor the Emergency Proclamations.

46.     While 29,289 cases have been identified to date in Anchorage, 173 individuals in Anchorage have died.[23]  Therefore, 99.4% of individuals in Anchorage who were identified as having tested positive have survived COVID-19.

47.     From the very beginning of awareness of COVID-19, it was clear that COVID-19 disproportionately affects the elderly, subjecting them to the highest risks of infection if exposed, hospitalization and death.[24]  This was likewise true in Alaska, where death rates were highest among persons over the age of 80, followed by those over the age of 70.[25]

48.     Based on this data, the defendant could have crafted far less burdensome mandates designed specifically to protect the most vulnerable age demographic, rather than infringing on the inherent rights of all Anchorage citizens.  The defendant could have exercised

---

[20]  https://www.adn.com/alaska-news/anchorage/2020/04/21/alaska-airlines-center-transformed-into-an-alternate-care-site-that-officials-hope-never-to-use/ (last visited April 23, 2021).

[21] https://apnews.com/article/virus-outbreak-alaska-anchorage-airlines-84eee63f4deb7bd617d7b62af044b27f (last visited April 23, 2021).

[22] https://alaska-coronavirus-vaccine-outreach-alaska-dhss.hub.arcgis.com/app/6a5932d709ef4ab1b868188a4c757b4f (last visited April 23, 2021).

[23] https://alaska-coronavirus-vaccine-outreach-alaska-dhss.hub.arcgis.com/app/6a5932d709ef4ab1b868188a4c757b4f (last visited April 23, 2021).

[24]  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 22, 2021).

[25]  http://www.epi.alaska.gov/bulletins/docs/b2021_02.pdf (last visited April 23, 2021).

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 10 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                          Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 10 of 28

her duty to be cognizant of and protective of individual civil liberties and engage a narrowly tailored strategy of containment for the segments of the population most at risk, without causing profound disruptions to the entire economy and all Anchorage residents regardless of their risk profile.

49.     Instead of narrowly tailoring interventions, the defendant directed the local government to deploy countermeasures applicable to the entire population, including extreme lockdown policies, massive governmental intrusions into plaintiffs' daily lives, and maximal invasions of plaintiffs' constitutional freedoms.

50.     Alaska experienced the following non-COVID-19 deaths in the year 2017, all without any proclamation of a civil emergency: 1) malignant neoplasms (cancer) – 908 deaths, 2) diseases of the heart – 799 deaths, and 3) unintentional injuries – 427 deaths.[26]

51.     Anchorage experienced the following non-COVID-19 deaths in the year 2013, all without any proclamation of a civil emergency: 1) malignant neoplasms (cancer) – 391 deaths and 2) diseases of the heart – 262 deaths.[27]

52.     The CDC reports that nationwide there have been 566,494 deaths, representing 0.17% of the total population.

53.     The FDA has issued EUAs for COVID-19 vaccines produced by three different manufactures, and two of the three are currently circulating in the population.  52.2% of Anchorage residents have received their first dose, and of that number 44.5% are fully

---

[26] http://dhss.alaska.gov/dph/VitalStats/Documents/PDFs/Leading%20Causes%20of%20Death%20in%20Alaska 2017.pdf (last visited April 23, 2021).

[27] http://dhss.alaska.gov/dph/VitalStats/Documents/stats/death_statistics/leading_causes_census/body3.html (last visited April 23, 2021.

COMPLAINT AND DEMAND FOR JURY TRIAL                                        Page 11 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                    Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 11 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

vaccinated.[28]  When looking at the elderly population, those Anchorage residents over the age of 65, 80.1% have received their first dose, and of that number 74.7% are fully vaccinated.[29]

54.     Dr. Marty Makary, a Professor from Johns Hopkins' Bloomberg School of Public Health, has projected that the United States is currently approaching herd immunity, which he attributed to the "inevitable result of viral spread and vaccination."[30] COVID-19 "cases" are down 77% over the past 6 weeks nationally, due to "natural immunity from prior infection." He explains: "Testing has been capturing only from 10% to 25% of infections, depending on when during the pandemic someone got the virus. Applying a time-weighted case capture average of 1 in 6.5 to the cumulative 28 million confirmed cases would mean about 55% of Americans have natural immunity." Another 18% of the population has been vaccinated. If 73% of Americans are already immune, over half of Anchorage is vaccinated, and even more still in the elderly population, there is no justification for a state of civil emergency in Anchorage.

55.     The designation of healthy people as a "case" which represents an "infection" is part of the "asymptomatic spread" argument, which has been used to justify isolating everyone, throwing them out of work, closing businesses, and destroying the learning and social lives of children in the name of public safety is not supported with credible scientific evidence that demonstrates that the phenomenon of "asymptomatic spread" is real. To the contrary, on June

---

[28] https://alaska-coronavirus-vaccine-outreach-alaska-dhss.hub.arcgis.com/app/c74be37e02b44bb8b8b40515eabbab55 (last visited April 23, 2021).

[29] https://alaska-coronavirus-vaccine-outreach-alaska-dhss.hub.arcgis.com/app/c74be37e02b44bb8b8b40515eabbab55 (last visited April 23, 2021).

[30]  https://www.wsj.com/articles/well-have-herd-immunity-by-april-11613669731 (last visited April 23, 2021).

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 12 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                       Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 12 of 28

7, 2020, Dr. Maria Von Kerkhov, head of the WHO's Emerging Diseases and Zoonosis Unit, told a press conference that from the known research, asymptomatic spread was "very rare."[31] "From the data we have, it still seems to be rare that an asymptomatic person actually transmits onward to a secondary individual." She added for emphasis: "it's very rare." Researchers from Southern Medical University in Guangzhou, China, published a study in August 2020 concluding that asymptomatic transmission of COVID-19 is almost non-existent.[32] "Asymptomatic cases were least likely to infect their close contacts," the researchers found. A more recent study involving nearly 10 million residents of Wuhan, China found that there were no, zero, positive COVID-19 tests amongst 1,174 close contacts of asymptomatic cases, indicating the complete absence of asymptomatic transmission.

56.    The Emergency Mandates require all persons, even those as young as 2, and even those with disabilities, to wear masks in public settings. This draconian age limit contradicts WHO guidance that "[c]hildren 5 years and younger should not be required to wear masks. This is based on the safety and overall interest of the child and the capacity to appropriately use a mask with minimal assistance. …the decision to use masks for children aged 6-11 should be based on … [p]otential impact of wearing mask on learning and psychosocial development, in consultation with teachers, parents/caregivers and/or medical providers."[33] Those with disabilities must wear masks, no exceptions. There is a medical exemption limited to those with trouble breathing. Individuals in Anchorage who cannot wear

---

[31]https://www.cnbc.com/2020/06/08/asymptomatic-coronavirus-patients-arent-spreading-new-infections-who-says.html (last visited April 23, 2021).

[32]  https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7403788/ (last visited April 23, 2021).

[33]  https://www.who.int/news-room/q-a-detail/q-a-children-and-masks-related-to-covid-19 (last visited April 23, 2021).

COMPLAINT AND DEMAND FOR JURY TRIAL                                        Page 13 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                    Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 13 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

a mask due to medical conditions unrelated to breathing difficulties, or due to psychological conditions, fall outside the exemption. They are currently cut-off from essential services, such as in-person doctor's visits, public education and grocery shopping. This discrimination is being encouraged by the defendant, by explicitly stating that the Municipality reserves the right to use all available enforcement options to assure compliance.

57. Dr. Mike Ryan, Executive Director of Health Emergencies for WHO, is on record as stating that there is "no specific evidence to suggest that wearing masks by the mass population has any benefit."[34] He went on to state, "[i]n fact there's some evidence to suggest the opposite, in the misuse of wearing a mask properly or fitting it properly." This is consistent with the position published in the New England Journal of Medicine, the premier medical journey in the country: "We know that wearing a mask outside health care facilities offers little, if any, protection from infection."[35]

58. Epidemiologists have noted that SARS-CoV-2 "is following the predictable bell-shaped pattern of epidemics predicted by Farr's law in 1840, regardless of mitigation efforts."[36]

---

[34] https://www.nationthailand.com/news/30385136 (last visited April 23, 2021).

[35] https://www.nejm.org/doi/full/10.1056/nejmp2006372 (last visited April 23, 2021).

[36] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7498003/ (last visited April 23, 2021).

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 14 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 14 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

59.     Masks have a profoundly dehumanizing effect. Over 60% of interpersonal communication is conveyed via non-verbal behaviors.[37] The mask hides non-verbal communication, distorts the structure of the face, and disguises identity.

60.     In October 2020, WHO Special Envoy on COVID-19 Dr. David Nabarro stated: "We in the World Health Organization do not advocate lockdowns as the primary means of control of this virus. The only time we believe a lockdown is justified is to buy you time to reorganize, regroup, rebalance your resources, protect your health workers who are exhausted, but by and large, we'd rather not do it."[38]

61.     In January 2021, Stanford University scientists published a peer reviewed study in a medical journal concluding that the mandatory stay-at-home orders and business closures imposed in eight (8) countries including the United States have "no clear significant beneficial effect" versus less restrictive measures adopted by countries such as Sweden and South Korea.[39]

62.     The real emergency the public confronts is one caused by the Emergency Mandates themselves, not by COVID-19. The public has been bombarded with doomsday public health language and scenarios, but the data showing the economic and human costs inflicted by Emergency Mandates has simply not been reported. There is no "unintended consequences" dashboard. In addition to immediate harm, the Emergency Mandates will have trailing long-term costs that cannot be quantified at this time.

---

[37] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2898840/#:~:text=An%20estimated%2060%20to%2065,is%20conveyed%20via%20nonverbal%20behaviors.&text=Many%20nonverbal%20behaviors%20are%20unconscious,patient's%20attitude%20and%20emotional%20state. (last visited April 23, 2021).

[38] https://twitter.com/spectator/status/1314573157827858434?lang=en (last visited April 23, 2021).

[39] https://onlinelibrary.wiley.com/doi/full/10.1111/eci.13484 (last visited April 23, 2021).

COMPLAINT AND DEMAND FOR JURY TRIAL                           Page 15 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                    Case No. 3:21-cv-_____

63.    The Annual Unemployment Rate in Anchorage went from 4.4% in 2019 up to 7.4% in 2020.[40]  The Annual Rate of Unemployment in Anchorage in 2020 was the highest rate of unemployment in at least 20 years.

64.    Suicide and depression rates have increased dramatically – particularly in younger people. CDC Director Robert Redfield admitted: "But there has been another cost that we've seen, particularly in high schools. We're seeing, sadly, far greater suicides now than we are deaths from COVID. We're seeing far greater deaths from drug overdose that are above the excess that we had as background than we are seeing deaths from COVID."[41] A CDC study reported that depression in adults is four times higher than the previous year at 24.3% of people (compared to 6.5% in 2019), and the rate of suicidal ideation in adults has doubled compared to the previous year.[42] Psychological damage to children includes social isolation, inability to participate in athletics, instilling fear of people not wearing masks, and collapse of family relationships when children are not allowed to be close to grandparents and other relatives.

65.    Economists have predicted that over the next 10 years, COVID-19 pandemic unemployment could cause about 460,000 excess deaths, rising to 890,000 by 2035, and 1.37 million by 2040.[43]

701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

HOLMES WEDDLE & BARCOTT, PC

---

[40] http://live.laborstats.alaska.gov/labforce/labdata.cfm?s=5&a=0 (last visited April 23, 2021).

[41] https://www.buckinstitute.org/covid-webinar-series-transcript-robert-redfield-md/ (last visited April 23, 2021).

[42] https://www.cdc.gov/mmwr/volumes/69/wr/mm6932a1.htm (last visited April 23, 2021).

[43]https://www.thinkadvisor.com/2021/01/12/covid-19-unemployment-could-kill-1-37m-economists/#:~:text=The%20economists%20predict%20that%2C%20over,1.37%20million%20people%20by%202040. (last visited April 23, 2021).

COMPLAINT AND DEMAND FOR JURY TRIAL                                           Page 16 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                   Case No. 3:21-cv-_____

## VI.    COUNT I – CESSATION OF EMERGENCY

66.    Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

67.    In *Home Building and Loan Association v. Blaisdell*, 290 U.S. 398 (1934), the U.S. Supreme Court stated: "Whether an emergency exists upon which the continued operation of the law depends is always open to judicial inquiry." 290 U.S. at 442, citing *Chastleton Corp. v. Sinclair*, 264 U.S. 543 (1924).

68.    In *Sinclair*, the Supreme Court stated: "A law depending upon the existence of emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change." 264 U.S. at 547.  Both *Blaisdell* and *Sinclair* are clear authority that an emergency and the rules promulgated thereunder must end when the facts of the situation no longer support the continuation of the emergency.

69.    They also forbid this court to merely assume the existence of a "public health crisis" based on the pronouncements of the defendant. They are clear authority that it is the duty of the court of first instance to grapple with this question and conduct an inquiry. "[A] Court is not at liberty to shut its eyes to an obvious mistake when the validity of the law depends upon the truth of what of what is declared." *Id*. The *Sinclair* court instructed lower courts to inquire into the factual predicate underlying a declaration of emergency, where there appears to have been a change of circumstances:  "the facts should be gathered and weighed by the court of first instance and the evidence preserved for consideration by this Court if necessary." 264 U.S. at 549.

70.    Defendant's own data, the data produced by the federal CDC and the availability of multiple COVID-19 vaccines demonstrate an undeniable change in circumstances, and that

COMPLAINT AND DEMAND FOR JURY TRIAL                                          Page 17 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                          Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 17 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

the exigencies underlying the Emergency no longer exist, if they ever did. Plaintiffs have accumulated and will present expert medical and scientific evidence further supporting this contention. If the exigencies no longer exist, then the Emergency and the accompanying Emergency Mandates must end.

71.     Plaintiffs therefore seek judgment that the exigencies underlying the Emergency no longer exist, if they ever did; that the Emergency has ended; and that in the absence of a public health emergency, the Defendant lacks any reason to continue to infringe on the civil liberties of the citizens of Anchorage, thereby nullifying all Emergency Mandates, making them directory not mandatory.

## VII.    COUNT II – RIGHT TO FREE ASSEMBLY, ASSOCIATION AND EQUAL PROTECTION

72.     Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

73.     The First Amendment to the U.S. Constitution states "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people to peaceably assemble, and to petition the government for a redress of grievances." U.S. CONST., amend. I.

74.     As Justice Gorsuch recently espoused in his concurring opinion in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 69 (2020), "Government is not free to disregard the First Amendment in times of crisis."  However, the defendant in continuing to order edicts has wrongly encumbered the rights of plaintiffs' free speech, assembly, association and equal protection.

**HOLMES WEDDLE & BARCOTT, PC**
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                      Page 18 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                            Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 18 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

75.     "The right of free and peaceable assembly for lawful purpose and in a manner without governmental interference or hindrance is a fundamental right, of the very essence of democracy, and is guaranteed under the First Amendment." C.J.S., Constitutional Law § 134.

76.     The Alaska Constitution at Art. 1, § 6 further reiterates and enforces that inherent right, as it states "[t]he right of the people peaceably to assemble, and to petition the government shall never be abridged."

77.     Defendant has set forth specific guidelines regarding the ways that people may associate and assemble with total disregard for the U.S. and Alaska Constitutions.

78.     Defendant has selected certain activities to place restrictions on, burdening the right to assemble freely and imposing increased costs to assemble in the desired fashion.  In such selection, defendant is acting in a manner that treats similarly situated groups disparately violating the inherent protections that government offer equal protection.

79.     The defendant no longer, if at any point, has a substantial government interest by which the regulations she has set forth are narrowly tailored to serve.

80.     Plaintiffs therefore seek judgment that the defendant has violated their fundamental First Amendment rights, deprived them of the equal protection of the laws under the Equal Protection Clause of the 14th Amendment of the U.S. Constitution, and has violated the Alaska Constitution.

### VIII.   COUNT II – RIGHT TO LIFE, LIBERTY, THE PURSUIT OF HAPPINESS, AND THE ENJOYMENT OF REWARDS OF INDUSTRY

81.     Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

COMPLAINT AND DEMAND FOR JURY TRIAL                                        Page 19 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                            Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 19 of 28

82. Art. I., §1 of the Alaska Constitution provides that "all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry; that all persons are equal and entitled to equal rights, opportunities, and protection under the law; and that all persons have corresponding obligations to the people and to the State."

83. In continuing the Emergency Proclamation, the government has impaired the rights to liberty and enjoyment of rewards of industry in a manner that is not exacting enough given the government interest, if any.

84. Plaintiffs therefore seek judgment that the Emergency Proclamation and related mandates violate Article I of the Alaska Constitution, and are thereby unconstitutional and must end.

## IX. COUNT III – SUBSTANTIVE DUE PROCESS

85. Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

86. The Court has held that the "core of the concept" of due process is protection against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).

87. In Planned *Parenthood v. Casey*, 505 U.S. 833, 857, the U.S. Supreme Court stated:

> Roe, however, may be seen not only as an exemplar of Griswold liberty, but as a rule (whether or not mistaken) of personal autonomy and bodily integrity, with doctrinal affinity to cases recognizing limits on governmental power to mandate medical treatment or to bar its rejection. If so, our cases since Roe accord with Roe's view that a State's interest in the protection of life falls short of justifying any plenary override of individual liberty claims. *Cruzan v. Director, Mo. Dept. of Health*, 497 U.S. 261, 278, 111 L. Ed. 2d 224, 110 S. Ct. 2841 (1990); cf., e. g., *Riggins v. Nevada*, 504 U.S. 127, 135, 118 L. Ed. 2d 479, 112 S. Ct. 1810 (1992); *Washington v. Harper*, 494 U.S. 210, 108 L. Ed. 2d 178, 110 S. Ct. 1028 (1990); see also, e. g., *Rochin v. California*, 342 U.S. 165, 96 L. Ed. 183, 72 S.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 20 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                    Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 20 of 28

Ct. 205 (1952); *Jacobson v. Massachusetts*, 197 U.S. 11, 24-30, 49 L. Ed. 643, 25 S. Ct. 358 (1905).

To reiterate: "a State's interest in the protection of life falls short of justifying any plenary override of individual liberty claims."

88.    If government's interest in the protection of life falls so short of being able to override individual liberty interests that it may not be used to prevent the killing of an unborn child, then certainly it cannot impede those individual liberties in an attempt to force ineffective and unproven methods of preventing and/or treating COVID-19 given the substantial survival rates.

**Right to Personal Autonomy and Bodily Integrity**

89.    The Supreme Court has stated that the protected liberty claims inherent in personal autonomy and bodily integrity include both the right to be free from unwanted medical intervention, and the right to obtain medical intervention:

> As the joint opinion acknowledges, ante, 505 U.S. at 857, this Court has recognized the vital liberty interest of persons in refusing unwanted medical treatment. *Cruzan v. Director, Mo. Dept. of Health,* 497 U.S. 261, 111 L. Ed. 2d 224, 110 S. Ct. 2841 (1990). Just as the Due Process Clause protects the deeply personal decision of the individual to refuse medical treatment, it also must protect the deeply personal decision to obtain medical treatment, including a woman's decision to terminate a pregnancy.

*Id*. at 927.

90.    The Emergency Mandates have forced all plaintiffs to wear face masks against their will. Face masks are a medical device. The FDA states: "The FDA regulates face masks, including cloth face coverings, and surgical masks as medical devices when they are marketed for medical purposes. Medical purposes include uses related to COVID-19, such as face masks to help stop the spread of disease…"

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 21 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                    Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 21 of 28

91. The Emergency Mandates have blocked plaintiff DeRivera from receiving the medical treatment that she needs. They have required her to wear face masks in spaces where she has suffered an adverse reaction.

**Right to Work**

92. The 14th Amendment guarantees a citizen's right to work for a living and support herself by pursuing a chosen occupation. *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972); *Truax v. Raich*, 239 U.S. 33, 41 (1915) ("It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [14th] Amendment to secure.").

93. Federal district courts adjudicating challenges to State COVID-19 mandates have acknowledged this right, and subjected mandates that implicate it to constitutional review. *County of Butler v. Wolf*, 486 F.Supp.3d. 883 (W.D. Penn. 2020). ("The nature of a state-wide shut down of 'non-life-sustaining' business is such an immediate and unprecedented disruption to businesses and their employees as to warrant constitutional review.").

94. In holding that Pennsylvania's closure of all "non-life-sustaining" businesses "was so arbitrary as to violate the Business Plaintiffs' substantive due process rights guaranteed by the Fourteenth Amendment," the Butler court stated:

> The Court recognizes that Defendants were facing a pressing situation to formulate a plan to address the nascent COVID-19 pandemic when they took the unprecedented step of sua sponte determining which businesses were "life sustaining" and which were "non-life-sustaining." But in making that choice, they were not merely coming up with a draft of some theoretical white paper, but rather, determining who could work and who could not, who would earn a paycheck and who would be unemployed – and for some – which businesses would live, and which would die. This was truly unprecedented.
>
> An economy is not a machine that can be shut down and restarted at will by government. It is an organic system made up of free people each pursuing their

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 22 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                          Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 22 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

dreams. The ability to support oneself is essential to free people in a free economy.

*Id.* at 925-926.

95.     Without the right to work in a profession of our own choosing, rather than being directed into a profession by the State, or directed not to work and placed on subsidies by the State, we are slaves. The Emergency Mandates have deprived Plaintiff Imbriani of his right to work and chosen occupation, forcibly closing and/or impeding on his independent contractor business, and then crippling the business by making it for a time de jure and then de facto impossible for business.

**Freedom of Movement**

96.     Separate and apart from the right of travel, there is a fundamental right to move about freely in the public. *City of Chicago v. Morales*, 527 U.S. 41, 53-54 (1999) (striking down an anti-loitering ordinance aimed at combatting street gangs and observing that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment."); *Papachristou v. Jacksonville*, 405 U.S. 156, 164-65 (1972) (citing a Walt Whitman poem in extolling the fundamental right to loiter, wander, walk or saunter about the community); *Bykofsky v. Middletown*, 429 U.S. 964 (1976) (Marshall, J., dissenting) ("The freedom to leave one's house and move about at will is of the very essence of a scheme of ordered liberty, . . . and hence is protected against state intrusions by the Due Process Clause of the Fourteenth Amendment.") (internal citation and quotation marks omitted)); *Waters v. Barry*, 711 F. Supp. 1125, 1134 (D.D.C. 1989) (referencing *Papachristou* and stating "[t]he right to walk the streets, or to meet publicly with one's friends for a noble purpose or for no

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 23 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                      Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 23 of 28

purpose at all—and to do so whenever one pleases—is an integral component of life in a free and ordered society.").

97.    When in place, the emergency "stay at home" orders require a default of confinement at home, unless a citizen is out for a purpose approved by defendant's orders. Furthermore, the orders also restrict movement to a lesser degree, but still in an unconstitutional fashion. This broad restructuring of the default concept of liberty of movement in a free society eschews any claim to narrow tailoring.

98.    Plaintiffs therefore seek judgment that the defendant has violated their constitutional rights to personal autonomy and bodily integrity, work, and freedom of movement under the Substantive Due Process Clause of the 14th Amendment of the U.S. Constitution.

## X.    COUNT IV – RIGHT OF PRIVACY

99.    Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

100.    Art. I, § 22 of the Alaska Constitution explicitly recognizes the right of privacy, and provides "[t]he right of the people to privacy is recognized and shall not be infringed."

101.    If the government's restrictions interfere with an individual's right to privacy, there must be a proper governmental interest in imposing the restrictions and the means chosen must bear a substantial relationship to the legislative purpose.  If governmental restrictions interfere with an individual's right to privacy, the relationship between means and ends cannot be merely reasonable but close and substantial.  *Ravin v. State,* 537 P.2d 494 (Alaska 1975).

102.    In February, 2020 the Office for Civil Rights ("OCR"), U.S. Department of Health and Human Services (HHS) released a bulletin entitled, "HIPAA Privacy and Novel

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                          Page 24 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                          Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 24 of 28

Coronavirus" which allowed entities to disclose, without a patient's authorization, protected health information.[44] The OCR's bulletin promulgated guidelines violating HIPAA and violating Alaska citizens' right to privacy regarding their personal health information.

103. Subsequently, HHS issued "Notification of Enforcement Discretion under HIPAA to Allow Uses and Disclosures of Protected Health Information by Business Associates for Public Health and Health."[45] This publication stated that, " As a matter of enforcement discretion, effective immediately, the HHS OCR will exercise its enforcement discretion and will not impose potential penalties for violations of certain provisions of the HIPAA Privacy Rule against covered health care providers or their business associates for uses and disclosures of protected health information by business associates for public health and health oversight activities during the COVID-19 nationwide public health emergency."

104. The above-referenced guidelines issued by HHS completely diluted the "The Privacy Rule" of HIPAA, which had mandated and unified privacy regulations for patients' PHI. In addition, HIPAA has been disregarded through the provision of the United States Code released on March 27, 2020 42 U.S.C.§ 1320b-5 entitled, "Authority to Waive Requirements During National Emergencies," which stated "[T]he patient's right to request privacy restrictions; and the patients' right to confidential communications,' has been waived." *(emphasis added).*

---

[44] U.S. Dept. of Health and Human Services, Office for Civil Rights, BULLETIN: HIPAA Privacy and Novel Coronavirus (Feb. 2020) https://www.hhs.gov/sites/default/files/february-2020-hipaa-and-novel-coronavirus.pdf.

[45] U.S. Dept. of Health and Human Services, *Notification of Enforcement Discretion under HIPAA to Allow Uses and Disclosures of Protected Health Information by Business Associates for Public Health and Health Oversight Activities in Response to COVID-19*, https://www.hhs.gov/sites/default/files/notification-enforcement-discretion-hipaa.pdf.

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                    Page 25 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                    Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 25 of 28

105. On April 15, 2021 Alaska's Governor Dunleavy announced that he ordered the Alaska Department of Law to investigate a potential violation of law after the Alaska Department of Health and Social Services shared names and contact information of individuals receiving COVID-19 vaccines with the Municipality of Anchorage[46] and thereby violated Alaska's constitutionally protected right to privacy and the HIPAA Privacy Rule.

106. Plaintiffs therefore seek judgment that the defendant in putting forth the government mandates and obtaining private health information has violated the guaranteed right of privacy.

## XI. COUNT V – FAILURE TO PROTECT INDIVDIUAL LIBERTIES

107. Plaintiffs adopt all of the preceding paragraphs and incorporate them by reference, as if fully set forth herein.

108. Anchorage Muni. Code § 3.80.030 defines public health emergency as an occurrence or imminent threat of an illness or health condition that:

1. Has been identified by the U.S. Centers for Disease Control and Prevention, State of Alaska Department of Health and Social Services or Anchorage Health Department to be caused by any of the following:

a. The appearance of a novel or previously controlled or eradicated infectious agent or biological toxin; or

b. Bioterrorism, defined as the intentional release of viruses, bacteria, or other germs that can sicken or kill people, livestock, or crops; and

2. Poses a high probability of any of the following harms, provided that one or more persons located within the municipality are among the affected population:

a. A large number of deaths in the affected population;

---

[46]https://gov.alaska.gov/newsroom/2021/04/15/governor-dunleavy-orders-investigation-into-unauthorized-sharing-of-dhss-information/.

COMPLAINT AND DEMAND FOR JURY TRIAL                           Page 26 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*            Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 26 of 28

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

b. A large number of serious or long-term disabilities in the affected population; or

c. Widespread exposure to an infectious or toxic agent that poses a significant risk of substantial future harm to a large number of people in the affected population.

109.    Anchorage Muni. Code § 3.80.065 indicates that during a public health emergency, the "Mayor shall be cognizant of and protective of individual civil liberties."

110.    As a direct and proximate result of the Mayor's own action, she has failed to be cognizant of and protective of individual liberties, and plaintiffs have been burdened in the exercise of their constitutional rights as more fully set forth above.

111.    Plaintiffs therefore seek a Declaratory Judgment that the defendant has violated local law thereby burdening and depriving the plaintiffs of their fundamental rights.

## PRAYER FOR RELIEF

WHERFORE, and for the foregoing reasons, plaintiffs request that this Court:

A.    Declare that the exigencies underlying Acting Mayor Austin Quinn-Davidson's initial Emergency Proclamation no longer exist, if they ever did; and in the absence of a public health emergency, the government lacks any reason to continue to infringe on the rights of the citizens of Anchorage, thereby nullifying the Emergency and the Emergency Mandates and making the same directory not mandatory;

B.    Declare that the Emergency Mandates violate the constitutional right of plaintiffs to peaceably assemble and associate, and their right to the equal protection of the laws;

C.    Declare that the Emergency Mandates violate the right of plaintiffs to liberty and enjoyment of rewards of industry;

HOLMES WEDDLE & BARCOTT, PC
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                     Page 27 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                    Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 27 of 28

D.  Declare that the Emergency Mandates violate the constitutional right of all plaintiffs to personal autonomy and bodily integrity, lawful occupation, and freedom of movement;

E.  Declare that the Emergency Mandates and actions stemming therefrom violate the guaranteed right to privacy;

F.  Declare that the defendant has failed to protect individual liberties in violation of law; and

G.  Such other relief as may be just and necessary under the circumstances.

DATED this 30<u>th</u> day of April, 2021, at Anchorage, Alaska.

HOLMES WEDDLE & BARCOTT, P.C.
Attorneys for Plaintiffs

By: _s/ Stacey C. Stone_____
        Stacey C. Stone
        Alaska Bar No. 1005030

**HOLMES WEDDLE & BARCOTT, PC**
701 WEST EIGHTH AVENUE, SUITE 700
ANCHORAGE, AK 99501-3408
TELEPHONE (907) 274-0666
FACSIMILE (907) 277-4657

COMPLAINT AND DEMAND FOR JURY TRIAL                                    Page 28 of 28
*Louis Imbriani, et al. v. Austin Quinn-Davidson*                          Case No. 3:21-cv-_____
Case 3:21-cv-00105-HRH   Document 1   Filed 04/30/21   Page 28 of 28