Ruth Botstein
Linda J. Johnson
Assistant Municipal Attorneys
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
Email: uslit@muni.org

Attorneys for Defendant
Austin Quinn-Davidson

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LOUIS IMBRIANI, ROBERT RUBEY, MICHAEL HANIFEN, HOLLY DERIVERA BRIAN JOHNSON, and HOCKEY OFFICALS OF ALASKA,<br><br>Plaintiffs,<br><br>vs.<br><br>AUSTIN QUINN-DAVIDSON, in her capacity as Acting Mayor for the Municipality of Anchorage,<br><br>Defendant. | Case No. 3:21-cv-00105 TMB |

## MOTION TO DISMISS

Filed more than a year into the worldwide COVID-19 pandemic and as case counts decrease and legal public health restrictions are relaxed and repealed, this lawsuit against the Acting Mayor of Anchorage levies an as-applied constitutional challenge against the Municipality of Anchorage's emergency COVID-19 response orders. Plaintiffs challenge the Municipality's declaration of emergency—which allowed Anchorage's mayors to issue emergency orders to protect the public health against the pandemic—as well as several of the

emergency orders, some of which had already expired by the time plaintiffs filed suit. Plaintiffs generally contend that the pandemic now has ebbed to the point where there need not be a state of emergency, operational restrictions on local businesses, or a masking requirements; they seek only declaratory relief.

But it is too late for this Court to grant any relief: Plaintiffs' claims are entirely moot and are not likely to recur. The Anchorage Assembly repealed the mask mandate and all other restrictions upon individuals and businesses pursuant to its oversight power. The underlying state of emergency also is no longer in effect—depriving the Acting Mayor of the authority to issue any further emergency public health orders. As of today, there are no mandatory or enforceable COVID-19 emergency orders or restrictions in Anchorage, and, with the termination of the emergency declaration, the Acting Mayor does not currently have the authority to issue new ones. Accordingly, this Court can grant no relief to plaintiffs and lacks subject matter jurisdiction over the litigation. It should dismiss the case for that reason.

## I. Statement of Undisputed Facts.

Because of the worldwide COVID-19 pandemic, then-Mayor of Anchorage Ethan Berkowitz declared a state of public health emergency in Anchorage on March 12, 2020. Complaint ¶ 1. The State of Alaska had already declared a state of emergency due to the burgeoning pandemic;[1] the United States would follow suit the next day.[2]

---

[1] State of Alaska Declaration of Public Health Disaster Emergency (March 11, 2020), *available at* https://gov.alaska.gov/newsroom/2020/03/11/governor-issues-public-health-disaster-emergency-declaration-for-covid-19/ (last visited June 4, 2021). This Court may take judicial notice of public records such as government orders. F.R. Evid. 201(b); *e.g., Loc. Joint Exec. Bd. of Las Vegas v. Nat'l Lab. Rels. Bd.*, 883 F.3d 1129, 1139 n.6 (9th Cir. 2018). In considering a motion to dismiss for lack of subject matter jurisdiction, it may also consider evidence outside the pleadings. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

[2] Proclamation Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (Proclamation 9994), 85 F.R. 15337-38 (March 13, 2020).

Motion to Dismiss
*Imbriani, et al. v. Quinn-Davidson*; Case No. 3:21-cv-00105 TMB
Page 2 of 19
Case 3:21-cv-00105-TMB   Document 8   Filed 06/07/21   Page 2 of 19

Pursuant to the Anchorage Municipal Code, the declared public health emergency authorized the Mayor to issue emergency mandates as reasonably necessary to protect the life and health of Anchorage's citizens.[3] In response to the pandemic, more than 20 emergency orders were issued between March 2020 and May 2021 by former Mayor Berkowitz and then by current Acting Mayor Austin Quinn-Davidson, who became Acting Mayor when Mr. Berkowitz resigned in October, 2020.[4] Most of the emergency orders were explicitly time-limited, remaining in effect for a month or less, before expiring. Orders were superseded or modified to conform closely to fast-evolving community conditions, developing medical knowledge about COVID-19, and changing guidance and recommendations issued by the federal Centers for Disease Control and Prevention (CDC).

Thus, for example, in November 2020, because of and in response to "dangerous new highs in the numbers of new cases and numbers of people hospitalized for COVID-19" and the fact that as a result, "Anchorage is on the brink of overwhelming our public health capacity, endangering the lives and wellbeing of the people of Anchorage," Acting Mayor Quinn-Davidson issued EO-16, a "Modified Hunker Down Order."[5] EO-16 placed limitations on gathering sizes, prohibited indoor restaurant dining, placed capacity limits on many indoor businesses, and closed certain other categories of entertainment businesses, such as theatres and pool halls. By its terms, this order was in effect from December 1, 2020 until January 1, 2021.[6]

---

[3] AMC 3.80.060.A (Imposition of orders and regulations during period of emergency); 3.80.065 (Special powers during a public health emergency).

[4] *See* https://covid-response-moa-muniorg.hub.arcgis.com/pages/emergency-orders (last visited June 7, 2021).

[5] Proclamation of Additional Emergency Order EO-16: Modified Hunker Down Order (Nov. 25, 2020), *available at* https://covid-response-moa-muniorg.hub.arcgis.com/pages/emergency-orders (last visited June 7, 2021).

[6] *Id.*

After a month in hunker-down status, "[n]ew case counts [were] down and decreasing, due to the collective sacrifices required by our previous emergency order and the individual actions of residents."[7] Thus, the Acting Mayor issued EO-17, an "Easing Up Order," to take effect when EO-16 expired; EO-17 reopened restaurants to indoor dining, allowed previously-closed entertainment facilities to re-open, and allowed for increased capacity in other business settings.[8]

By April 2021, a combination of Anchorage's COVID-19 management, Alaska and Anchorage's ongoing vaccination efforts, and other factors had significantly lowered COVID-19 cases in the Municipality. The last of Anchorage's emergency orders, EO-20, took effect on April 16, 2021.[9] It loosened the gathering limits for indoor groups; and allowed all categories of businesses to open, albeit subject to social distancing and other types of restrictions.[10] In addition, on May 3, 2021, Anchorage's revised mask mandate, EO-13-v5, took effect; this mask mandate generally required persons six years of age and older to wear masks in indoor public and communal settings within the Municipality.[11] EO-13-v5 exempted several categories of

---

[7] Proclamation of Additional Emergency Order EO-17: Easing Up Order (Dec. 29, 2020), *available at* https://covid-response-moa-muniorg.hub.arcgis.com/pages/emergency-orders (last visited June 7, 2021).

[8] *Id.*

[9] Proclamation of Additional Emergency Order EO-20: "Do It For Summer" (Apr. 12, 2021), *available at* https://covid-response-moa-muniorg.hub.arcgis.com/pages/emergency-orders (last visited June 7, 2021).

[10] *Id.*

[11] Proclamation of Additional Emergency Order EO-13-v5: Requirement for Masks or Cloth Face Coverings (Updated and Reissued 4/30/21) (Apr. 30, 2021), *available at* https://covid-response-moa-muniorg.hub.arcgis.com/pages/emergency-orders (last visited June 7, 2021).

Motion to Dismiss
*Imbriani, et al. v. Quinn-Davidson*; Case No. 3:21-cv-00105 TMB
Page 4 of 19
Case 3:21-cv-00105-TMB   Document 8   Filed 06/07/21   Page 4 of 19

people from masking requirements. One such group was children younger than six years; the order noted that masks were "recommended, but not required, for children ages 2-5."[12]

The Anchorage Municipal Code grants the Mayor the power to issue emergency orders during a public health emergency, but it also gives Anchorage's legislative body a check on this executive power. Pursuant to AMC 3.80.085, the Anchorage Assembly has the power to terminate "[e]mergency orders or regulations proclaimed during a period of emergency" by "passing a resolution of the assembly declaring that the emergency order or regulation is no longer necessary." On April 28, 2021, the Assembly exercised this power with respect to EO-20; under the Assembly's unanimous vote, effective May 3, 2021, all social distancing, gathering-size limitations, and business restrictions were revoked, all becoming only recommendations.[13] On May 14, 2021, following a revision in mask recommendations by the CDC, the Acting Mayor and the Assembly similarly terminated the mask mandate, converting the mask requirements to advisory-only recommendations effective that same day.[14] On May 25—with only a portion of

---

[12]     *Id.* This exception for young children was also in prior versions of the mask mandate.

[13]     Resolution No. AR 2021-191, a resolution of the Anchorage Assembly repealing AR 2020-296, As Amended, and requiring periodic updates to the applicable COVID-19 Mitigation Plan for Assembly Chambers (approved May 25, 2021); Anchorage Daily News, *Anchorage Assembly removes COVID-19 requirements for businesses and gatherings effective Monday* (April 27, 2021), *available at* https://www.adn.com/alaska-news/anchorage/2021/04/27/anchorage-assembly-removes-all-covid-19-requirements-for-gatherings-and-businesses/ (last visited June 7, 2021).

**[14]**     Resolution No. AR 2021-190, a resolution of the Anchorage Assembly regarding the Mayor's Proclamation of Emergency (COVID-19) and the Mayor's and Acting Mayor's Orders and Regulations issued thereunder).

The mayor announced that the mask mandate repeal was warranted "as a result of updated guidance from the Centers for Disease Control (CDC) advising that fully vaccinated individuals no longer need to wear masks in most public settings, increased vaccination rates, and decreasing case counts in Anchorage." Press Release, *Anchorage Mask Mandate to Become Advisory on May 21* (May 14, 2021)). The Acting Mayor's repeal announcement had an effective date of May 21, 2021. *Id*. In a meeting on the afternoon of May 14, 2021, the Assembly subsequently made the repeal effective immediately. Anchorage Daily News, *Anchorage's mask mandate is now*

an emergency order remaining in effect within the Municipality—Acting Mayor Quinn-Davidson issued a proclamation terminating the city's COVID-19 public health emergency, thereby ending all emergency orders and eliminating the ability of the mayor to issue new ones.[15] No emergency order has since been proposed or passed by the Assembly or requested by the Acting Mayor.

Plaintiffs filed this lawsuit on April 30, 2021. On that day, emergency order EO-20 and mask mandate EO-13-v5 were the only municipal COVID-19 mandates still in effect; the mandatory gathering and capacity limitations of EO-20 already were set to terminate three days later.

As of today, there is no state of emergency in Anchorage and there are no mandatory COVID-19 emergency orders in effect within the city.

## II. Legal Standards.

Pursuant to Federal Rule of Civil Procedure 12(b), a party raising certain defenses may raise them in a motion to dismiss filed in lieu of an answer. Defendant Acting Mayor Austin Quinn-Davidson asserts two of those defenses here: lack of subject matter jurisdiction and failure to join a required party.[16]

Federal court jurisdiction "depends on the existence of a 'case or controversy' under Article III of the Constitution."[17] Plaintiffs always bear the burden to demonstrate that the

---

*advisory after Assembly speeds up city's timeline* (May 14, 2021), *available at* https://www.adn.com/alaska-news/anchorage/2021/05/14/anchorage-assembly-ends-mask-mandate-effective-immediately/ (last visited June 7, 2021).

[15] Exhibit A (Municipality of Anchorage Proclamation of Termination of Emergency (COVID-19) (May 25, 2021)).

[16] F.R.C.P. 12(b)(1), (7).

[17] *Indep. Living Ctr. of S. California, Inc. v. Maxwell-Jolly*, 590 F.3d 725, 727 (9th Cir. 2009).

Motion to Dismiss
*Imbriani, et al. v. Quinn-Davidson*; Case No. 3:21-cv-00105 TMB
Page 6 of 19
Case 3:21-cv-00105-TMB   Document 8   Filed 06/07/21   Page 6 of 19

federal court possesses subject matter jurisdiction over their claims.[18] The defense of lack of subject matter jurisdiction sounds under Rule 12(b)(1). Because "[m]ootness is a jurisdictional issue, [] federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists."[19] "A claim that has lost its character as a live controversy is considered moot," and the federal court therefore "lack[s] jurisdiction to consider it."[20] "Whether a live controversy exists depends on whether [a court] can grant effective relief" to plaintiff.[21] Thus, "[i]f there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction."[22]

A motion to dismiss under 12(b)(6) must normally be decided based solely on the sufficiency of the complaint without reference to evidence beyond the four corners of the complaint, but this is not the case when lack of subject matter jurisdiction is asserted under Rule 12(b)(1). "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court."[23] Such a showing then requires the plaintiff to produce evidence of the court's jurisdiction.[24] "The district court obviously does not

---

[18] *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

[19] *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (internal quotes omitted) (quoting *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir.1999) ).

[20] *Indep. Living Ctr.*, 590 F.3d at 727.

[21] *Id.; NASD Disp. Resol., Inc. v. Jud. Council of State of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007)).

[22] *Foster*, 347 F.3d at 745 *(*quoting *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir.1999)).

[23] *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

[24] *Id.*

Motion to Dismiss
*Imbriani, et al. v. Quinn-Davidson*; Case No. 3:21-cv-00105 TMB
Page 7 of 19
Case 3:21-cv-00105-TMB   Document 8   Filed 06/07/21   Page 7 of 19

abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes."[25]

### III. Arguments.

**A. Plaintiffs' claims are moot, depriving this Court of subject matter jurisdiction, and should therefore be dismissed pursuant to Rule 12(b)(1).**

Plaintiffs bring an as-applied constitutional challenge to Anchorage's COVID-19 response, arguing that at the present time, there is no longer an emergency situation justifying restrictions on individuals and businesses. They request only declaratory relief, asking that the Court declare the city's emergency orders to be invalid, unjustified, and entered in violation of various asserted rights. Complaint ¶¶ 71, 80, 98, 106, 111, A-F.

The gravamen of plaintiffs' complaint is that they "seek judgment that the exigencies underlying the Emergency no longer exist, if they ever did; that the Emergency has ended; and that in the absence of a public health emergency, the Defendant lacks any reason to continue to infringe on the civil liberties of the citizens of Anchorage, thereby nullifying all Emergency Mandates, making them directory not mandatory." Complaint ¶ 71.

But the results plaintiffs seek have already happened and there is nothing left for the Court to order. There is no longer a state of emergency in Anchorage; the Acting Mayor and Assembly have collectively repealed all the Emergency Orders that were in effect when plaintiffs filed suit, making any COVID-19 restrictions advisory rather than mandatory; and there are no current COVID-19 restrictions upon individuals or businesses in Anchorage. There is therefore no "effective relief" that this Court could award to the plaintiffs, rendering their claims moot and depriving this Court of subject matter jurisdiction.

---

[25] *Id.*

Plaintiffs likely will seek shelter in the "voluntary cessation" exception to the mootness doctrine, but that exception cannot save their claims from dismissal. This doctrine applies with full force to private parties, preventing them from tactically mooting out cases by simply ceasing to engage in the challenged conduct during litigation to obtain dismissal, only to resume the conduct once the lawsuit is over: "A private defendant's voluntary cessation of challenged conduct does not necessarily render a case moot because, if the case were dismissed as moot, the defendant would be free to resume the conduct."[26] But the same is *not* true where, as here, the mootness results from government action, rather than a private party's voluntary discontinuance of a behavior.

In 2019, the Ninth Circuit in *Board of Trustees of Glazing Health & Welfare Trust v. Chambers*[27] examined and clarified its case law regarding the proper analysis and standards for "determining whether the repeal, amendment, or expiration of legislation renders a lawsuit challenging the legislation moot."[28] Government officials are presumed to act in good faith; for this reason, the court held, "the repeal, amendment, or expiration of challenged legislation is generally enough to render a case moot and appropriate for dismissal."[29] The showing of repeal, amendment, or expiration creates a "presumption of mootness" that can be rebutted only by demonstrating that there exists "a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it." Any such determination "must be founded in the record" and cannot be based "on speculation alone."[30] Although some earlier opinions in the

---

[26] *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1197 (9th Cir. 2019).

[27] 941 F.3d 1195 (9th Cir. 2019).

[28] *Id. at* 1197.

[29] *Id.*

[30] *Id.* at 1199.

Circuit adopted mootness analyses less favorable to government—for example by declining to apply the mootness presumption where statutes were amended or repealed, or by requiring government to demonstrate to a "virtual certainty" that similar legislation would not subsequently be enacted—*Glazing Health & Welfare* specifically overruled all those cases.[31]

Applying *Glazing Health & Welfare*'s standards, numerous district courts in the Circuit have dismissed as moot challenges to rescinded or expired COVID-19 restrictions, orders, and guidances. In *Z.W. v. U.S. Department Of Homeland Security*,[32] the district court dismissed as moot a challenge to a COVID-19 guidance requiring international students with F-1 visas to either attend in-person classes or leave the United States.[33] During litigation, the government announced it would rescind the guidance, and did so, deleting the guidance and replacing it with a new one that reversed course, allowing the students to remain in the United States while enrolled in online-only classes.[34] The court agreed the claims were moot, noting that the government's policy reversal was broad and unequivocal; fully resolved plaintiffs' objections; and that government had not engaged in the challenged conduct since its policy reversal.[35] The same factors are true here.

*Harborview Fellowship v. Inslee*[36] dismissed as moot a challenge to Washington's COVID-19 cap on the number of attendees at in-person religious services, which were alleged to violate the First Amendment.[37] By the time the matter came before the court, the cap on number

---

[31]     *Id.*

[32]     2020 WL 9813329 (C.D. Cal. Oct. 1, 2020).

[33]     *Id.* at *1.

[34]     *Id.* at *2.

[35]     *Id.* at *2-3.

[36]     2021 WL 662390 (W.D. Wash. Feb. 19, 2021).

[37]     *Id.* at *1.

Motion to Dismiss
*Imbriani, et al. v. Quinn-Davidson*; Case No. 3:21-cv-00105 TMB
Page 10 of 19
Case 3:21-cv-00105-TMB   Document 8   Filed 06/07/21   Page 10 of 19

of worshippers had been downgraded from a requirement to a recommendation as part of the state's reopening plan.[38] Although the plaintiff argued that "the restrictions have changed over time and so the cap could be restated, making its claims not moot," the court nevertheless dismissed the claim because plaintiff had not shown that that the Governor was "reasonably expected to reenact" the gathering limit as required under *Glazing Health & Welfare*.[39] *Ministries v. Newsom*[40] similarly found moot a challenge to California's expired limit on the number of congregants, noting that "[a] statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed."[41] And in *Altman v. Cty. of Santa Clara*,[42] the district court had no trouble finding a challenge to county stay-at-home orders restricting in-person gun sales—alleged to be a Second Amendment violation—to be moot after in-person retail was again opened up.[43]

---

[38]     *Id.* at *5.

[39]     *Id.; see also Martinko v. Whitmer*, 465 F. Supp. 3d 774, 777 (E.D. Mich 2020) ("[D]efendant notes that the executive orders plaintiffs challenge have been rescinded and that the restrictions that are the basis of this lawsuit no longer exist. . . . . The Court takes judicial notice of the fact that the governor has recently lifted the stay-at-home order and that most businesses may now operate normally. Plaintiffs' assertion that "there is a good chance that these restrictions will come back[]" is pure speculation and does not suffice to avoid the conclusion that their request for prospective injunctive and declaratory relief is moot." (citations omitted)); *Rosebrock v. Mathis*, 745 F.3d 963, 974 (9th Cir. 2014) ("[I]n light of the presumption that the Government acts in good faith, we have previously found the heavy burden of demonstrating mootness to be satisfied in 'policy change' cases without even discussing procedural safeguards or the ease of changing course.").

[40]     465 F. Supp. 3d 1068 (S.D. Cal. 2020).

[41]     *Id.* at 1072 (quoting *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014)); *see also Pleasant View Baptist Church v. Beshear*, 838 F. App'x 936, 938 (6th Cir. 2020) (finding moot a challenge to expired COVID-19 restrictions because "[o]nce a law is off the books and replaced with a 'new rule' that does not injure the plaintiff, a case becomes moot, leaving us with an absence of jurisdiction to adjudicate the case.").

[42]     464 F. Supp. 3d 1106 (N.D. Cal. 2020).

[43]     *Id.* at 1116.

Plaintiffs here similarly cannot overcome the presumption of mootness in this case. The record reflects no reasonable expectation that the Acting Mayor is likely to issue a new emergency declaration (or that the Assembly would ratify that emergency by allowing it to remain in effect) and then reenact any COVID-19 mandates requiring business closures, gathering limitations, masking, or any of the other restrictions about which plaintiffs complain. Indeed, the record powerfully suggests that there is no reasonable likelihood of that at all. There are several reasons for this.

First, at the present time the Mayor has no legal authority to issue COVID-19 emergency orders. Under AMC 3.80.060.A and 3.80.065, that authority is conditioned upon the existence of a public health emergency. But there is no public health emergency, because the Acting Mayor terminated it on May 25, 2021, finding that "the level of public risk has reduced to a point where the majority of emergency orders and regulations have transitioned to health advisories, the administration transitioned emergency operations into a recovery phase, and the need for emergency response has diminished."[44] The Court must presume that government officials act in good faith. Thus, there is no reasonable likelihood of issuance of new, similar COVID-19 emergency orders, both because the Acting Mayor cannot issue them at the present time, and because her stated view is that current conditions do not justify an emergency declaration.

Second, even if the Acting Mayor did want to issue a new emergency declaration and then subsequent new, substantially similar COVID-19 orders, the record strongly suggests that the Anchorage Assembly again would not authorize the emergency[45] and would terminate the

---

[44] Exhibit A.

[45] AMC 3.80.080 ("The emergency proclaimed in accordance with the provisions of sections 3.80.030 through 3.80.090 shall terminate after 48 hours from the issuance of a proclamation, or upon the issuance of a proclamation or resolution of the assembly declaring that an emergency no longer exists, whichever occurs first, except that such emergency may be

Motion to Dismiss
*Imbriani, et al. v. Quinn-Davidson*; Case No. 3:21-cv-00105 TMB
Page 12 of 19
Case 3:21-cv-00105-TMB   Document 8   Filed 06/07/21   Page 12 of 19

emergency orders, as it unanimously did when it terminated EO-20 last month. The Assembly holds a complete check on mayoral emergency power. Given that both the Acting Mayor and the entire Assembly are on record against any further restrictions or emergency orders, plaintiffs cannot show any reasonable likelihood that such legislation or orders are likely to re-occur.

Third, there is no likelihood of re-enactment due to the upcoming transition to a new Anchorage Mayor. Acting Mayor Quinn-Davidson's term ends in less than a month; on July 1, newly elected Mayor Dave Bronson will take office. A centerpiece of Mayor-Elect Bronson's campaign was his disagreement with all municipal COVID-19 emergency orders, regulations, and restrictions. He promised "I will end the shutdowns on my first day in office"; assured voters that his administration would immediately "end the current mandates on small businesses and our citizenry"; stated that "we must end the devastating closure mandates"; and explained that he would not have issued emergency orders of this kind, saying "I would not have shut down our Assembly, our small businesses, or our churches."[46] Given that Mayor-Elect Bronson will soon be at the helm of the Municipality, there is simply no reasonable likelihood that new COVID-19 restrictions will be forthcoming. Even if pandemic conditions were to worsen in the future, Mayor-Elect Bronson has made clear that his COVID-19 management strategy will not include issuance of substantially similar emergency orders as plaintiffs challenge here.

To be sure, there exists some contrary authority, largely outside the Ninth Circuit; some courts have found challenges to expired or rescinded COVID-19 orders were not subject to dismissal as moot. But those cases involved factual indications that the same or similar orders

---

extended for such additional periods of time as determined necessary by resolution of the assembly.").

[46]    Anchorage Daily News, *Anchorage mayor candidate Q&As: Bronson and Dunbar on issues facing the city*, April 28, 2021 (available at https://www.adn.com/alaska-

Motion to Dismiss
*Imbriani, et al. v. Quinn-Davidson*; Case No. 3:21-cv-00105 TMB
Page 13 of 19

would be re-issued or re-enacted—factors wholly absent here. For example, in *Bols v. Newsom*,[47] the government argued that a challenge to hair and nail salon closures was moot because the closure order had expired—but subsequent to making that claim, a new order closed those same businesses again.[48] Similarly, in *Roman Catholic Diocese of Brooklyn v. Cuomo*,[49] the Supreme Court found a challenge to a New York order imposing occupancy restrictions on religious gatherings not moot because the litigants remained under a "constant threat" of imposition of a similar order since the Governor retained unilateral freedom to reclassify businesses into more restrictive categories and often did so without prior notice.[50] But there is no constant threat of sudden new restrictions here; as discussed above, there is no existing emergency declaration allowing the Acting Mayor to issue public health orders at all, and no political will to reinstate restrictions by either the executive or legislative branch. Nor is this a fact pattern where the structure of the government's COVID-19 response continues to include allegedly problematic distinctions between groups;[51] to the contrary, there are no current restrictions at all in Anchorage, and the current Acting Mayor, Assembly, and new Mayor have made clear that they will not re-impose any.

---

news/anchorage/2021/04/28/anchorage-mayor-candidate-qas-bronson-and-dunbar-on-issues-facing-the-city/ (last visited June 3, 2021)).

[47] 2021 WL 268609 (S.D. Cal. Jan. 26, 2021), *reconsideration denied sub nom. JD Bols v. Newsom*, 2021 WL 1313545 (S.D. Cal. Apr. 8, 2021).

[48] *Id.* at *3; *accord Dark Storm Indus. LLC v. Cuomo*, 471 F. Supp. 3d 482, 494-95 (N.D.N.Y. 2000) (challenge to expired COVID restrictions not moot where government in process of imposing new restrictions).

[49] 141 S. Ct. 63 (2020).

[50] *Id.* at 68; *see also Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (similar).

[51] *See Big Tyme Invests., L.L.C. v. Edwards*, 985 F.3d 456, 464 (5th Cir. 2021) ("[T]he Governor's subsequent orders continue to differentiate between 'bars' and 'restaurants' in their respective operating capacities and reopening gating criteria. Consequently, even though the

Motion to Dismiss
*Imbriani, et al. v. Quinn-Davidson*; Case No. 3:21-cv-00105 TMB
Page 14 of 19
Case 3:21-cv-00105-TMB   Document 8   Filed 06/07/21   Page 14 of 19

Nor do plaintiffs' claims for declaratory relief present a live, non-moot controversy. Plaintiffs do not make a facial challenge to the expired emergency declaration or orders; they attack only the reasonableness of the orders as being unnecessarily harsh given the state of the pandemic when they filed suit. But this type of fact- and moment-specific inquiry does not retain vitality once there are no longer any actual restrictions in effect. "A case or controversy exists justifying declaratory relief only when the challenged government activity . . . is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties."[52]

Where, as here, "no 'live' controversy remains between the parties because the challenged activity has 'evaporated or disappeared,'" the court can grant no meaningful relief and the case is moot.[53] Because plaintiffs' claims are moot, this Court should dismiss this case for lack of subject matter jurisdiction.

### B. Plaintiffs' Constitutional Privacy Claim should be dismissed pursuant to Rule 12(b)(7) for failure to join a required party.

Plaintiffs' claims suffer from other fatal defects beyond the lack of subject matter jurisdiction. One such problem pertains to Count X, in which plaintiffs allege that the Acting

---

restrictions on 'bars' may have lessened, the crux of the bar owners' equal protection claim remains unchanged.").

[52] *Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*, 893 F.2d 1012, 1015 (9th Cir. 1989) (internal quotes omitted) (quoting *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 122 (1974)); *see also Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007) ("When a plaintiff seeks declaratory relief, as here, the test for mootness . . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (internal quotes omitted)).

[53] *Lohn*, 511 F.3d at 964.

Motion to Dismiss
*Imbriani, et al. v. Quinn-Davidson*; Case No. 3:21-cv-00105 TMB
Page 15 of 19
Case 3:21-cv-00105-TMB   Document 8   Filed 06/07/21   Page 15 of 19

Mayor violated Alaska's constitutional right to privacy.[54]  Complaint ¶¶ 99-106.  But the wrongdoing they allege is solely by third-parties, not the defendant Acting Mayor of Anchorage or any municipal actor; accordingly, the claim should be dismissed for failure to join those entities.

In Count X, Plaintiffs allege that the United States Department of Health and Human Services "promulgated guidelines violating HIPAA and violating Alaska Citizens' right to privacy regarding their personal health information." Complaint ¶ 102.  They similarly allege that a portion of the United States Code enacted in 2020 undermines their privacy rights. Complaint ¶ 104.  And they allege that Alaska's Department of Health and Social Services "shared names and contact information of individuals receiving COVID-19 vaccines with the Municipality of Anchorage and thereby violated Alaska's constitutionally protected right to privacy and the HIPAA Privacy Rule."  Complaint ¶ 105 (footnote omitted).

None of these allegations describe any actions or wrongdoing by the only defendant in this case, Acting Anchorage Mayor Quinn-Davidson.  Anchorage's mayor is not responsible for legal infirmities in federal statutes or federal regulations.  Nor is she responsible for the actions of the Alaska Department of Health and Social Services, which is a state, not municipal, agency. If plaintiffs want to litigate the constitutionality of the actions of the federal and state governments, it must sue those governments—not the Acting Mayor of Anchorage.  But plaintiffs have not done so.

---

[54] Even if the claim had been brought against the MOA, there is no private right of action based on a violation of the Alaska Constitution. *Thoma v. Hickel*, 947 P.2d 816 (Alaska 1997). *Lowell v. Hayes*, 117 P.3d 747 (Alaska 2005), noted that the Alaska Supreme Court has not recognized a *Bivens*-type private right of action for constitutional torts under the Alaska Constitution. *Adkins v. Stansel*, 204 P.3d 1031 (Alaska 2009), also held that the Alaska Supreme Court has not recognized a private right of action for damages based on the Alaska Constitution. An effort by Plaintiffs to amend their complaint therefore would be futile.

Motion to Dismiss
*Imbriani, et al. v. Quinn-Davidson*; Case No. 3:21-cv-00105 TMB
Page 16 of 19
Case 3:21-cv-00105-TMB   Document 8   Filed 06/07/21   Page 16 of 19

Under Federal Rule of Civil Procedure 19(a), if the court cannot "award complete relief to the parties present without joining the non-party" or the "the non-party has a legally protected interest in this action that would be impaired or impeded by adjudicating the case without it," the party is a required party who must be joined the litigation.[55] Both are true here: This Court cannot award any meaningful relief to plaintiffs regarding the alleged unconstitutionality of federal and state actions, because Anchorage's mayor is not responsible for and lacks the authority to alter those sources of law. And the United States and the State of Alaska each has a legally protected interest in the constitutionality of their laws and actions that they are entitled to appear and litigate.

Considerations of sovereign immunity likely prevent either the United States or the State of Alaska from being joined as parties to this case, however. Rule 19(b) therefore would require the Court to analyze whether the claims against these parties "in equity and good conscience" should "proceed among the existing parties or be dismissed." Dismissal is the only fair and equitable remedy in this instance. A judgment by the Court finding a federal rule or statute unconstitutional would prejudice the United States if it cannot appear and defend; the same would be true for a judgment finding the State of Alaska's actions unconstitutional.[56] Nor could the Court issue effective relief in the case even if it did believe the federal or state actions were unconstitutional; the Acting Mayor of Anchorage has no authority over state or federal law or

---

[55] *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 997 (9th Cir. 2011) (internal quotes omitted) (*quoting Yellowstone County v. Pease,* 96 F.3d 1169, 1172 (9th Cir.1996)).

[56] *See* F.R.C.P. 19(b)(1) (in determining whether to dismiss, court should consider "the extent to which a judgment in the person's absence might prejudice that person").

government officials.⁵⁷ And there is no conceivable way this Court could lessen the prejudice against absent governments through creative fashioning of a judgment.⁵⁸

Accordingly, Count X should be dismissed for failure to join required parties.

### IV. Conclusion.

Plaintiffs' attack on Anchorage's COVID response is too late. There no longer is a declared state of emergency in Anchorage and there are no current mandatory emergency orders that restrict the activities of Anchorage's citizens and businesses. Nor can plaintiffs show that similar orders are likely to be re-issued. The court can grant no relief to plaintiffs, mooting their claims and depriving this Court of subject matter jurisdiction over the suit. This Court should therefore dismiss plaintiffs' complaint in its entirety.

Respectfully submitted this 7th day of June, 2021.

KATHRYN R. VOGEL
Municipal Attorney

By: s/Ruth Botstein & Linda J. Johnson
Ruth Botstein
Assistant Municipal Attorney
Alaska Bar No. 9901016
Linda J. Johnson
Assistant Municipal Attorney
Alaska Bar No. 8911070
Municipal Attorney's Office
P.O. Box 196650
Anchorage, Alaska 99519-6650
Phone: (907) 343-4545
Fax: (907) 343-4550
E-mail: uslit@muni.org

---

⁵⁷ *See* F.R.C.P. 19(b)(3) (court should consider "whether a judgment rendered in the person's absence would be adequate").

⁵⁸ *See* F.R.C.P. 19(b)(2) (court should consider whether it could lessen prejudice to absent parties in the form of relief or judgment).

<u>Certificate of Service</u>
The undersigned hereby certifies that on June 7, 2021, a true and correct copy of the foregoing was served by electronic means through the ECF system.

<u>s/ Amber J. Cummings</u>
Amber J. Cummings, Legal Secretary
Municipal Attorney's Office